UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DR. MAX GOUVERNE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION 2-07-206 |
| | § | |
| CARE RISK RETENTION GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Care Risk Retention Group, Inc.'s ("Care") Motion for Summary Judgment (Dkt. #33). After considering the motion, response and applicable law, the Court is of the opinion that the motion should be DENIED.

**Factual Background**

Plaintiff brought a breach of contract lawsuit against Care based on the cancellation of his professional liability insurance policy. Care cancelled the policy because Plaintiff failed to disclose a potential medical malpractice claim on his insurance application.[1] Specifically, Plaintiff performed a facelift on Cheryl Harned on March 11, 2004 in his surgical suite ("Harned Incident").[2] Harned experienced a hematoma during the surgery, which Plaintiff corrected at that time. After Harned was discharged, Plaintiff received a telephone call from her. He went to her hotel room and observed an even larger hematoma. Plaintiff took Harned to the hospital where he attempted to evacuate the hematoma. The anesthesiologist administering paralytic drugs could not secure an airway, and Harned turned blue. Plaintiff attempted an emergency tracheotomy. Blood obstructed Harned's throat and Plaintiff cut down with a scalpel, mistaking her vertebrae for her trachea. He

---

[1] Dkt. # 36, Ex.1, PL 00018.

[2] *See* Operative Report, Dkt. # 33, Ex. 1 and Ex. 12, p. 4 for all the details of the Harned Incident.

broke the scalpel off in her vertebrae and applied the tracheostomy hook with such force that he fractured two of Harned's vertebrae. Plaintiff learned the next morning that she could not move her left side.

On June 27, 2004, Plaintiff received an email from Harned, which he maintains caused him to believe that he would not be sued by Harned. The email stated, in part:

> This brings up the whole subject of "blame". All my family concurs with me that you should NEVER have been put in the position you were put in to do the tracheotomy. Once you were in the situation, you are guilty only of doing everything possible to save my life. Yes, there have been a horde of issues that happened because of what you did and how you did it. Nevertheless, I expect to sing and talk and swallow and run as good as before, or at least close to that. From day one, I believed in you and trusted you not only with my life, but also with my hopes for my future. You never have, and never will, violate my trust.[3]

Plaintiff received a records request for Harned's records on May 26, 2005,[4] which according to Care, should have alerted Plaintiff that a medical malpractice lawsuit was possible.

In August 2005, Plaintiff submitted his application for a professional liability insurance policy with Care, in which Plaintiff failed to disclose the Harned Incident. Plaintiff signed four different forms, which Care argues demonstrate, as a matter of law, that Plaintiff misrepresented material facts and/or breached warranties of the policy:

> (1) Application for Prior Acts Coverage, signed on August 12, 2005, asked Plaintiff "Do you have knowledge or information of any potential or actual claim or suit that may be brought against you or of any incidents?" Plaintiff answered "No." Above the signature line was written: "I declare that I Know of no potential or actual claims, suits or incidents presently pending which have not been reported to my previous carrier(s). . . I HEREBY DECLARE THAT I HAVE READ THE ABOVE APPLICATION AND THAT ALL STATEMENTS MADE IN THIS APPLICATION ARE TRUE, MATERIAL, AND COMPLETE. I UNDERSTAND THAT IF PRIOR ACTS COVERAGE IS OBTAINED BY FRAUD, MATERIAL

---

[3] Dkt. # 36, Ex. 1, PL 00035.

[4] Dkt. # 33, Ex. 2.

MISREPRESENTATION OR OMISSION, IT IS VOID."[5]

(2)   Applicant's Authorization and Certification, signed on August 12, 2005, stated above the signature line: "ALL STATEMENTS MADE IN THIS APPLICATION ARE TRUE, MATERIAL, AND COMPLETE. I UNDERSTAND THAT: (1) IF THE POLICY IS ISSUED, THIS IS DONE BY CARE IN RELIANCE UPON THESE REPRESENTATIONS, AND (2) ANY POLICY OBTAINED BY FRAUD, MATERIAL MISREPRESENTATION OR OMISSION IS VOID."[6]

(3)   Application for Professional Liability Insurance for Physicians and Surgeons, signed on August 22, 2005, asked "ARE YOU AWARE OF ANY ACTS, ERRORS, OMISSIONS OR CIRCUMSTANCES WHICH MAY RESULT IN A MALPRACTICE CLAIM OR SUIT BEING MADE OR BROUGHT AGAINST YOU?" Plaintiff answered "No." Above the signature line, the Application also provided: "WARRANTY: It is warranted to the Insurer that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein."[7]

(4)   Statement of No Known Claims/Losses, signed on August 22, 2005 declared that Plaintiff: "(1) ha[d] no known losses or claims that have not been reported to my prior insurance carrier; (2) ha[d] no knowledge or information relating to a MEDICAL INCIDENT which could reasonably result in a claim, that has NOT been reported to a prior insurance carrier; (3) ha[d] no knowledge of ANY REQUEST FOR MEDICAL RECORDS which might result in a claim. . . ."[8]

The policy issued on August 19, 2005, and the relevant provisions provided:

<u>General Terms, Conditions and Exclusions</u>:
"In consideration of payment of the premium and in reliance upon the statements made in the Application, which is made a part of and deemed attached to this Policy and which you and the Insureds warrant as being true, complete and accurate. . . we agree as follows [insuring provisions]"[9]

---

[5]  *Id.* Ex 3.

[6]  *Id.* Ex. 4; Plaintiff signed this same Authorization and Certification again on August 22, 2005. *Id.* Ex. 7.

[7] *Id.* Ex. 6, CARE 00047. Plaintiff signed the same application and gave the same negative response to the above question on October 12, 2005. *Id.* Ex. 9.

[8]  *Id.* Ex. 8. Plaintiff signed the same form again on October 12, 2005. *Id.* Ex. 10.

[9]  *Id.* Ex. 5, p. 3–4.

3

Definitions:
"Application . . . All such applications, attachments and materials are deemed attached to and incorporated into this Policy. YOU WARRANT THAT ALL SUCH INFORMATION IS TRUE, COMPLETE AND ACCURATE."[10]

Representations and Severability:
"In issuing this Policy, we relied upon the statements and representations in the Application. The Insureds warrant that all such statements and representations are true and deemed material to the acceptance of risk or the hazard assumed by us under this Policy."

"The Insureds agree that in the event any such statements or representations are untrue, this Policy will not afford any coverage with respect to any Insured who knew the facts that were not truthfully disclosed in the Application, . . ."[11]

Plaintiff asserts January 13, 2006 was the first time he realized a claim related to the Harned Incident would be filed against him. On that date, he received a letter from Harned's attorney giving him statutory notice that a medical malpractice claim was being filed against him.[12] The lawsuit was filed on February 16, 2006 and Plaintiff submitted a claim to Care.[13] After being notified about the claim on March 14, 2006, a Care representative sent Plaintiff a reservation of rights letter on March 21, 2006. Care withdrew its defense on April 28, 2006, rescinded the policy and refunded Plaintiff's premium.[14] Plaintiff brought the instant lawsuit on March 22, 2007.

Care now seeks summary judgment arguing Plaintiff warranted that his responses were true and correct, and the warranty formed the basis of Care issuing coverage. Plaintiff's warranty was a condition precedent to coverage under the policy, which has not been satisfied. Also, based on the

---

[10] *Id.* at 5.

[11] *Id.* at 20.

[12] Dkt. # 36, Ex. 1, PL 000357.

[13] *Id.* at PL 000258.

[14] *Id.* at PL 000118.

outrageous medical events that took place, Plaintiff was aware that the incident "could" or "may" result in a claim against him as described in the Care application. Plaintiff's failure to disclose this incident was a misrepresentation that was "material to the risk" and "contributed to the contingency or event on which the policy became due and payable." TEX. INS. CODE § 705.004.  Plaintiff asserts that genuine issues of material fact exists as to Care's breach of warranty and misrepresentation defenses.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).   The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986).  An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322.  If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id*.

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the

5

movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## Discussion

### A.   Misrepresentation

Care argues that Plaintiff's failure to disclose the Harned Incident on his insurance application was a misrepresentation that was "material to the risk" and "contributed to the contingency or event on which the policy became due and payable." TEX. INS. CODE § 705.004.

Chapter 705 of the Texas Insurance Code deals with "Misrepresentations by Policyholders." Specifically, § 705.004 addresses misrepresentations in a policy application and provides the following:

> (a) An insurance policy provision that states that false statements made in the application for the policy or in the policy make the policy void or voidable:
>
> > (1) has no effect; and
> > (2) is not a defense in a suit brought on the policy.
>
> (b) Subsection (a) does not apply if it is shown at trial that the matter misrepresented:
>
> > (1) was material to the risk; or
> > (2) contributed to the contingency or event on which the policy became due and payable.
>
> (c) It is a question of fact whether a misrepresentation made in the application for the policy or in the policy itself was material to the risk or contributed to the contingency or event on which the policy became due and payable.

Thus, the Texas Insurance Code allows an insurer to void coverage based on a misrepresentation on the insurance application if the misrepresentation was material to the risk and contributed to the event on which the policy became due. The Texas Supreme Court has held that five elements must be pled and proved before an insurer may deny coverage because of a misrepresentation on an application for insurance: (1) a representation by the insured, (2) falsity of the representation; (3) reliance thereon by the insurer; (4) intent to deceive by the insured, and (5) materiality of the representation. *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980). Fact issues generally exist as to the materiality of the representation and the insured's intent to deceive. *Id.* at 616; *Cartusciello v. Allied Life Ins. Co. of Tx.*, 661 S.W.2d 285, 288 (Tex. App.– Houston [1st Dist.] 1983, no writ).

In the instant case, Plaintiff has presented evidence creating a fact question as to whether Plaintiff intended to deceive Care on his application for insurance. Plaintiff denies that he had an

7

intent to deceive Care. Based on his communications with Harned, he claims he did not believe that she would sue him.[15] Further, he maintains if he did believe a lawsuit was possible he would have filed a claim with his previous insurance carrier before the policy expired. He repeatedly asserts that when he signed the Care insurance application, he did not anticipate that he would be sued by any of his patients. Thus, he believed he was truthfully answering all of Care's inquiries.

### B.     Warranty

Care also asserts that Plaintiff breached the warranty that the statements in his application were true, which was a condition precedent to coverage under the policy. In an insurance contract, a warranty is a statement made by the insured, which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true. *Lane v. Travelers Indem. Co.,* 391 S.W.2d 399, 402 (Tex. 1965). Generally, provisions in insurance contracts that turn on the truth or falsity of answers in an insurance application are treated as representations because warranties which cause forfeiture are disfavored under Texas law. *Allied Bankers Life Ins. Co. v. De La Cerda*, 584 S.W.2d 529, 532 (Tex. Civ. App.–Amarillo 1979, writ ref'd n.r.e.). However, a policy provision that expressly provides that coverage does not exist unless the applicant's statements are true operates as a warranty or condition precedent. *Riner v. Allstate Life Ins. Co.*, 131 F.3d 530, 536–37 (5th Cir. 1997) (inserting an unambiguous warranty "demonstrating that the parties intended the contract to rise or fall on the literal truth of an insured's certification" available under Texas law as a condition precedent to coverage); *Cartusciello*, 661 S.W.2d at 287 (recognizing that certificates of insurance may be so worded so that warranties of good health are established). When the term in question is susceptible of only one reasonable construction, the courts must give the words their plain meaning. *Puckett v. U.S. Fire Ins. Co.*, 678

---

[15] Dkt. # 36, Ex. 1, Affidavit of Dr. Max Gouverne.

S.W.2d 936, 938 (Tex. 1984).

In the instant case, the policy could not state any more clearly that the insured warranted, as a condition of coverage, that the statements he has provided in his application were true, complete and accurate.  Specifically, the Application, signed by Plaintiff, provided: "WARRANTY: It is warranted to the Insurer that the information contained herein is true and that is shall be the basis of the policy of insurance and deemed incorporated therein."[16]  The policy also explicitly included the warranty language in the insuring clause (i.e. "in reliance upon the statements made in the Application, which is made a part of and deemed attached to this Policy and which you and the Insureds warrant as being true, complete and accurate"[17]).  Additionally, the Definitions section defined "Application" as. . . "All such applications, attachments and materials are deemed attached to and incorporated into this Policy.  YOU WARRANT THAT ALL SUCH INFORMATION IS TRUE, COMPLETE AND ACCURATE."[18]  Finally, the Representations provision clearly stated: "In issuing this Policy, we relied upon the statements and representations in the Application. The Insureds warrant that all such statements and representations are true and deemed material to the acceptance of risk or the hazard assumed by us under this Policy.  The Insureds agree that in the event any such statements or representations are untrue, this Policy will not afford any coverage with respect to any Insured who knew the facts that were not truthfully disclosed in the Application, . . ."[19]  Thus, Care has included warranty language in the application and policy, incorporated the application into the policy, and conditioned coverage on the truthfulness of the statements in the

---

[16] Dkt. # 33, Ex. 6, CARE 00047.

[17] *Id.* Ex. 5, pp. 3–4.

[18] *Id.* at 5.

[19] *Id.* at 20.

9

insurance application. *See Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965) (finding no warranty because there was no express declaration in the policy regarding warranties, there was no provision that the policy would only be effective if the statements were true and there was no provision that the policy would be void if the statements were untrue).

While the Court finds that a warranty exists in the policy, a question of fact still exists as to whether Plaintiff breached the warranty by providing untruthful information in his application. Plaintiff warranted that the responses in his application were true, complete and accurate. Care maintains that Plaintiff provided an untrue response to the question "are you aware of any acts, errors, omissions or circumstances which *may* result in a malpractice claim or suit being made or brought against you," to which he responded "No."[20] The literal truth of this question hinges, at least in part, on the insured's subjective belief that a suit may be brought against him. A New York district court confronted a similar issue when an insurer sought to void coverage based on a misrepresentation in the application because the insured answered "No" to the question "whether any facts or circumstances had occurred in the past year 'that might give rise to a claim or suit.'" *Chicago Ins. Co. v. Halcond*, 49 F. Supp. 2d 312, 315 (S.D.N.Y. 1999). Finding an issue of fact, the *Halcond* court reasoned, "the carrier's question to the prospective insured call[ed] for the applicant's opinion or otherwise evoke[d] his or her state of mind. In those circumstances, the applicant's response cannot be said to be a misrepresentation unless the applicant has not truthfully portrayed his or her mental state." *Id.*

According to Plaintiff, he did not believe that a suit would be brought against him by any of his patients at the time he signed the Care application. While the outrageous medical facts and the patient's record request could have alerted Plaintiff to the possibility of a lawsuit, Plaintiff's belief,

---

[20] *Id.* Ex. 6, CARE 00047 (emphasis added).

10

based on the lapse of time and his communications with the patient, that a suit would not be brought against him is certainly relevant and creates a fact issue for the jury to consider.[21]

## Conclusion

For these reasons, the Court finds genuine issues of material fact as to whether Plaintiff made misrepresentations in his insurance application or breached any warranties under the policy by giving untrue responses in his application. Accordingly, Defendant Care Risk Retention Group, Inc.'s Motion for Summary Judgment (Dkt. #33) is DENIED.

It is so ORDERED.

SIGNED this 13th day of May, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[21] This same holding applies to the warranties made in the Statement of No Known Claim/Losses (i.e. Plaintiff declared he "ha[d] no knowledge or information relating to a MEDICAL INCIDENT which could reasonably result in a claim, that has NOT been reported to a prior insurance carrier; (3) ha[d] no knowledge of ANY REQUEST FOR MEDICAL RECORDS which might result in a claim. . . ."). *Id.* Ex. 8.